ALBANY,
August, 1820.

BRIGHT
v.
SUPERVISORS OF
CHENANGO.

In the matter of BRIGHT *against* THE SUPERVISORS OF THE COUNTY OF CHENANGO.

*A mandamus lies to the supervisors of a county, to compel them to allow the account of the Clerk of the County, for advances made*

AT the last *January* term, on motion of the plaintiff, a rule was granted, requiring the defendant to show cause, on the first day of the next term, why a *mandamus* should not issue, commanding them to allow the account of the plaintiff as

by him in purchasing *Books for recording Deeds and Mortgages, &c.* and for *sending notices to judges and justices of the peace, of the pedlars* who are *licensed,* with *interest on such advances.* Such services being required by law of the clerks, and no specific compensation provided for them, are properly chargeable to the county, and ought, therefore, to be allowed by the supervisors and paid according to the *act,* (sess. 36. ch. 49. s. 1. 2 *N.R. L.* 137.) *for defraying the public and necessary charges in the respective counties, &c.*

a legal charge against the county, &c. the board of supervisors having refused to allow it. The plaintiff was clerk of the county, and had purchased books for recording deeds and mortgages, and for the entry of common rules of the Court of *Common Pleas*, and performed other services required of him by law as clerk, as sending notices to judges and justices, of pedlars' licenses, and for which no specific compensation was provided by law. (1 *N. R. L.* 369. 372. *Acts concerning Deeds and Mortgages*, 2 *N. R. L.* 228. *Act to restrain Hawkers, Pedlars, &c.* sess. 36. ch. 9. s. 3.)

The account, amounting to 172 dollars, 13 cents, was presented to the board of supervisors at their annual meeting, in *October*, 1819, and the plaintiff claimed to have it allowed by them. The supervisors admitted that the several items of the account were correctly made, but refused to allow it, on the ground of its not being a legal charge against the county. The plaintiff again presented his account at the last meeting of the board, previous to *January* term, 1820, and claimed to have it allowed; but the supervisors refused to allow it.

After the rule to show cause was obtained, the counsel agreed to a case, containing the facts above stated, which they submitted to the Court, without argument, on the points stated by them.

*Birdsall* for the plaintiff.

*L. Clark* for the defendants.

WOODWORTH, J. delivered the opinion of the Court. The plaintiff was clerk of the county of *Chenango*, and had purchased books for recording deeds and for the entry of common rules, and had rendered other services as clerk, for which no specific compensation is provided by law. By the statute (2 *N. R. L.* 137. sess. 36. ch. 49. s. 1.) the *supervisors* are directed " *To examine, settle, and allow all accounts chargeable against the county, and ascertain what sum ought to be raised for the payment thereof.*"

It is admitted that the plaintiff has advanced his money for the books, and performed the services, as charged; the

claim for compensation is highly equitable, and presents a strong case for relief, in some shape. The question is, whether the defendants are liable, by the provisions of any existing law. The legislature have prescribed the duties of clerks, and, among other things, they are directed to procure *the necessary books for recording deeds and mortgages, and to perform the services charged by the plaintiff*; but the statute does not provide for the payment. It does not follow from the silence of the statute in this respect, that the legislature intended that the clerks should make the advances without being remunerated, particularly when it is considered that the books are not for the benefit of the officer, but the public; that the advances necessary to be made are considerable; that the tenure of office is during pleasure, and the emoluments in most cases moderate, and in some very trifling. A construction productive of injustice must be rejected, unless rendered inadmissible by the plain language of the law; neither can this be considered a *casus omissus*, and, therefore, a proper subject for legislative interposition. It is, in my judgment, to be viewed in a different light. The books directed to be procured become permanent records, and are the property of the county. Although not exclusively, they are chiefly for the benefit of the county ; the clerk is bound to transmit them to his successor. The successor is not bound to pay the preceding clerk, and hence it follows, that if no compensation is to be made, it becomes a game of chance between the different incumbents. The one who comes in after books are provided, and retires before new ones are necessary, will find it an office of profit, while the predecessor who purchased the books, and is shortly thereafter removed, may not have realized sufficient to equal his actual advances. Such injustice has not received the sanction of law, but is guarded against by requiring the supervisors, " *to allow all accounts chargeable against the county.*" The authority is general, and was intended to embrace every case where the service rendered was specially for the benefit of the county, and for which other provision had not been made. The present case is clearly one of that description, so far as it respects the books purchased. The charge for notifying the several judges and justices of the county, of the

names of persons to whom pedlars' licenses have been grant-ed, is for services required by law to be performed by the clerk. The object of this notice is to insure the collection of the penalty against pedlars trading without a license ; the penalty, when collected, is given, the one half to the infor-mer, the residue to the poor of the town : thus the several towns in the county may be benefitted, and, no doubt, have been benefitted by penalties recovered under this act. The notice given by the clerk is almost indispensable to enable the magistrates to detect offenders ; and if so, was not the ser-vice rendered for the benefit of the county ? I am of opinion that it was ; and that it forms a just charge, which the de-fendants were bound to allow, together with interest on the moneys advanced. The rule to show cause why a *man-damus* should not issue, must be made absolute.