*UTICA,*
*October, 1821.*

Hull
v.
Supervisors
of Oneida.

---

## Hull *against* The Supervisors of the county of Oneida.

THIS was an application on behalf of *Amos G. Hull,* for a *mandamus,* to compel the supervisors to audit and allow

Where an inferior tribunal has a *discretion,* and proceeds to exercise it, this Court has no jurisdiction to control that discretion by a writ of *mandamus.*

But if subordinate public agents refuse to act, or to entertain the question for their discretion, in cases where the law enjoins upon them to do the act required, this Court may enforce obedience to the law by a *mandamus,* where no other legal remedy exists.

As where the *supervisors* of a county refuse to allow a claim for services, as a county charge, this Court, if it be a legal charge, may instruct and guide the supervisors, in the execution of their duty, by a writ of *mandamus,* and compel them to admit the claim as a county charge, or, in other words, set them in motion, without controlling the exercise of their judgment and discretion, as to the amount proper to be allowed.

The Supervisors are not obliged to allow any charge for services relative to a *pauper,* unless a previous order of a Justice has been obtained, or the services have been performed by request of the overseers of the poor, and the account presented to them for adjustment.

UTICA,
October, 1821.

HULL
v.
SUPERVISORS
OF ONEIDA.

his account for a surgical operation on a transient pauper in the town of *Paris.*

In *August* term, 1821, the following rule was entered: " On reading and filing the affidavits of *A. G. Hull, Seth Hastings,* and *Isaac Miller, ordered,* that the supervisors of the county of *Oneida* show cause, by the first day of next term, why a *mandamus* should not issue requiring them to allow and pay the aforesaid *Amos G. Hull.*"

*Storrs* now showed cause, and contended, 1. That the supervisors *having acted on the subject matter,* and audited the account of the relator at five dollars, this Court had no jurisdiction to compel them to change or review their decision. That the board of supervisors were, by the statute, vested with exclusive discretion as to the amount to which the relator was entitled ; and it being a matter resting in their discretion, this Court has no power to interfere with, or control their decision by writ of *mandamus.* He cited *Skinner,* 290. *Carthew,* 160. 2 *Term Rep.* 338. 14 *East,* 397. 1 *Wilson,* 206. 4 *Burr.* 2295. 5 *Com. Dig.* tit. *Mandamus,* B. 28. 5 *Mod.* 453. 15 *East,* 157.

2. That the services rendered were done without any order for that purpose from a Justice of the Peace, and without the request of an overseer of the poor ; and had never been presented to the overseers of the poor for payment or adjustment. Without admitting the power of this Court to interfere, he contended that this objection was fatal to the application ; and he cited 8 *Johns. Rep.* 323. 1 *N. R. L.* 288.

*T. E. Clark,* contra.

PLATT, J. delivered the opinion of the Court. From the affidavits of *Amos G. Hull, Isaac Miller,* and *Seth Hastings,* it appears, that one *Patrick Crosby* was a transient sick pauper in the town of *Paris,* not having any legal settlement in this state. A regular order by a Justice was made, on the application of an overseer of the poor, for a weekly allowance to support the pauper, he being incapable of removal. While in this situation, there was a sud-

den necessity for a surgical operation to save the life of the pauper; and without any special application of the overseers, and without any order from a Justice for that purpose, the surgeon (*A. G. Hull*) went ten miles, and performed the operation. For this service he charged thirty dollars, and presented his account to the board of supervisors, as a charge against the county, at their various meetings, in 1818, 1819, and 1820. By the affidavit of *Jesse Curtis*, one of the supervisors, it appears, " that the reasons why the account of thirty dollars was not allowed, were, that it was deemed by the board, that the said account ought to have been presented, for adjustment and payment, to the overseers of the poor of the town of *Paris;* that the account, when presented, was not accompanied by any certificate of the overseers of the poor, that he (Doctor *Hull*) was ever employed to perform the said services, or that the account had been allowed by them; nor that any Justice's order for medical aid had ever been made." And " that the sum of five dollars was at last, ordered to be paid to the said *Hull;* not as a claim which was deemed strictly allowable, but to stop the claim, and rid the board of the trouble thereof; and that the board considered the said sum of five dollars, under all the circumstances, as much as ought to be paid."

The superintending control over inferior courts, magistrates, corporations, &c. by *mandamus*, is *in subsidium justitiæ.* In the case of the *King* v. *Archbishop of Canterbury*, *&c.* (15 *East*, 117.) *Lord Ellenborough* said , " this Court, in the exercise of this authority, to grant the writ of *mandamus*, will render it, as far as it can, the suppletory means of substantial justice, in every case where there is no other specific legal remedy for a legal right."

In the case of the *King* v. *the Justices of Kent*, (14 *East*, 395.) *Lord Ellenborough* said, " if the justices had rejected the application, in the exercise of the discretion vested in them by the legislature, the Court would not interfere; but if they had rejected it, on the ground now stated, that they had no power to grant it, the Court would interfere so far as to set the jurisdiction of the magistrates in motion, by directing them to hear and determine upon the application." In that

**[margin note:]** UTICA, October, 1821.

HULL
v.
SUPERVISORS
OF ONEIDA.

case, the statute declared, that the justices shall have au-
thority to limit and appoint the rate of wages of such la-
bourers, artificers, &c. as they shall think meet by their
discretion, to be rated, &c." The justices refused to act,
upon the ground that they had no jurisdiction to interfere
in that particular case ; and a peremptory mandamus was
granted, not, as the judges explained, to control the discre-
tion of the magistrates, but to guide and instruct them in
their duty, so far as to determine that they had authority by
law to settle a rate of wages in the case before them.

In perfect accordance with these cases, and all the other
authorities cited by the counsel for the supervisors, we
granted the rule to show cause in this case. The distinc-
tion recognized by us is, that where the inferior tribunal
has a *discretion,* and proceeds to exercise it, we have no
jurisdiction to control that discretion by *mandamus.* But
if the subordinate public agents refuse to act, or to enter-
tain the question for their discretion, in cases where the
law enjoins upon them to do the act required, it is our
office to enforce obedience to the law by *mandamus,* in
cases where no other legal remedy exists. The case of the
*People, ex relat. Wilson,* v. *Supervisors of Albany,* (12 *Johns.
Rep.* 414.) and *the Matter of Bright* v. *Supervisors of Che-
nango,* (18 *Johns. Rep.* 242.) exemplify this distinction.

From the facts disclosed by the affidavits in this case,
the question before the board of supervisors was, not whe-
ther the applicant claimed more than a reasonable compen-
sation for his services ; but whether the account was legal-
ly chargeable against the county ? At two successive boards,
the claim was rejected, on the ground that it was not a
county charge. *Curtis,* one of the supervisors, swears, that
on the third application, the account for thirty dollars was
rejected, as not being a legal claim against the county : but
" that the sum of *five* dollars was, at last, ordered to be paid
to the said *Hull,* not as a claim which was deemed strictly
allowable, but to stop the claim, and to rid the board of
the trouble therefor ; and that the board considered the said
sum of five dollars, under all the circumstances, as much as
ought to be paid." By this I understand, that the super-
visors denied that he had any legal claim which they were

bound to audit and allow; but in order to get rid of his importunity, they offered to give him five dollars.

Now, this shows clearly, that the supervisors did not entertain the question, whether thirty dollars, or any other sum, was a reasonable allowance for the services rendered. That would have been a matter for their *discretion*, over which we exercise no control. The supervisors acted upon the principle, that the applicant *had no legal claim ;* and the order to pay him five dollars, according to their own showing, was an unwarrantable act. They had no right to make such a gratuity. And, on the other hand, Doctor *Hull* had a perfect right to reject the compromise, and to insist upon having his account audited and allowed, *as a county charge ;* and in order to test and decide his legal right, the rule to show cause was granted.

The question now presented is, whether the supervisors were bound to audit and allow the account, as a county charge ? If it be a legal claim, then we have no doubt of our jurisdiction to instruct and guide the supervisors in the execution of their duty, by *mandamus ;* not to control their discretion, in judging what is a reasonable compensation for such services ; but to compel them to admit the claim as a county charge, and to exercise their discretion as to the amount ; or, in the language of Lord *Ellenborough*, in the case before cited, " this court would interfere so far as to set the inferior jurisdiction in motion."

On examining the provisions of the " act for the relief and settlement of the poor," and particularly the twenty-fifth section of that act, we are of opinion that the previous order of the justice for occasional allowance for the *sustenance* of the transient pauper, was not, in itself, a sufficient authority to warrant the allowance of this claim as a county charge. The extraordinary expense of such a surgical operation (although proper and necessary in this case) cannot legally be imposed on the public, without an express previous order of the justice, on the application of the overseers, or, at least, a subsequent ratification and sanction by the justice and overseers. Here was no such previous order, nor any subsequent adoption of the claim. We are, therefore, constrained to say, that in rendering the ser-

UTICA,
October, 1821.

HULL
v.
SUPERVISORS
OF ONEIDA.

vice the relator must be deemed to have acted gratuitously, or to have relied upon individual responsibility for his reward.

The motion for a *mandamus* is, therefore, denied; but without costs.

Motion denied.

END OF OCTOBER TERM.