⸺⸺ᵒ◉ᵒ⸺⸺

IN RICHMOND SUPERIOR COURT, JUNE TERM, 1831.

THE STATE *ex relatione* JOHN FORSYTH *vs.* THE JUSTICES of the Inferior Court of Richmond County.

*Mandamus.*

THE object of this mandamus is to compel the Justices of the Inferior Court to order payment to the Relator of a sum of money awarded to him for his damage sustained by the opening of a public road through his enclosed grounds in the vicinity of Augusta. It appears from the return of the justices to an alternative mandamus, that on the 25th June, 1821, upon the petition of certain citizens, an order of the Inferior Court was passed appointing commissioners to examine and report whether a public road to run from the southern extremity of Marbury street to its intersection with the Savannah road ought to be opened, and where, so as most to suit public convenience; that on the 16th July, 1821, the commissioners made their report, recommending that the road be opened, and prescribing its route, which lay through the lands of the Relator; upon which report an order was passed for opening the road " provided the same is done at the proper cost and charges of said applicants;" that on the 22d December, 1823, an order was made directing a jury to be drawn to assess the damage sustained by the Relator and others in consequence of the opening of the road, which was accordingly done, but the jury not being able to agree were discharged; that on the 2d of May, 1825, on the peti-

The Mandamus is an established remedy to oblige Inferior Courts and magistrates to do that justice which without such writ, they are in duty and by virtue of their offices bound to do.

To sustain an application for mandamus, it is not only necessary that the relator should have a legal right to the thing commanded; but he must also be without a legal remedy.

The Inferior Court is not a corporation, and cannot be sued as such.

tion of the Relator and Gilbert Longstreet, the sheriff was ordered to summon a second jury to assess the damage sustained by them in opening said road, which order was obeyed, but that jury also being unable to agree were discharged, that the same order was renewed 23d June, 1828, to which no return appears to have been made ; that on the 6th April, 1829, the sheriff was directed to summon three commissioners named in the order to assess the damage and to make report to the court at its next term ; and finally, that on the 28th September, 1829, the commissioners having reported that the damages amount to four hundred and twenty five dollars, it was ordered that the clerk call upon the persons on whose application the road was opened for the amount of the damages, and that the same when collected be immediately paid over to the Relator. This last order has never been carried into effect, and the Justices refuse either to enforce it, or to order the amount of damages so assessed to be paid according to law, and assign as their reasons,

1st. That they are protected from liability to pay any thing, by the proviso in the order for opening the road, "that it should be at the costs of the applicants," one of whom was believed to be Gilbert Longstreet, the occupant of the land, and agent of the Relator.

2d. That the act of 18th December, 1818, which alters the general road law so far as concerns Richmond County, and vests in the Inferior Court full and discretionary powers in that regard, does not authorize or require the court to pay damages out of the county funds.

3d. That if the Relator permitted the road to be opened under this conditional order, without being first secured in the damages, it was his own folly, and the Inferior Court should not answer for it.

4th. That the damages were assessed by three freeholders, and not by a jury of twelve men as the law directs, whose award is therefore illegal, and not binding on them, and that the proceedings of the commissioners were irregular in this, that the Inferior Court had no notice of the time of their meeting.

Upon examining these reasons, none is found to be satisfactory. The Inferior Court, when it passed the order to open the road, exercised a power vested in it by law, imposed an obligation on all persons concerned to yield obedience to its authority, and itself incurred the legal responsibility annexed to the act, from which it could not protect itself by the proviso in its order. The court no doubt proceeded under the act of the 4th December, 1799, on the subject of roads and bridges, as is inferred from the subsequent steps taken to assess the damages by a jury. That act is one " to empower the Inferior Courts of the several counties in this State, to order the laying out of public roads, &c. The 2d sec. of it

RICHMOND,
June, 1831.

FORSYTH
v.
THE JUSTICES,
&c.

makes provision for assessing damages where roads are order-
ed to be opened through inclosed grounds, by the inquest of
a jury, and declares that " it shall be the duty of such court
to order the amount of damages so assessed to be paid out of
the next county tax, or out of any monies belonging to the
county fund." Here then we see not only the power of the
court to open the road, but its duty towards those who may
be injured by its order ; and the fund from which damages
arising from such injury are to be paid.

The act of 18th December, 1818, does not touch this sub-
ject, being designed only to change the manner of working
upon roads in this county, and to substitute a limited tax in
place of the labor formerly required of all who were liable to
road duty. When therefore the Inferior Court passed its or-
der of the 16th July, 1821, the Relator was bound to submit
to it, no matter how much aggrieved ; and so far from being
justly chargeable with folly for non-resistance, would have been
highly criminal, had he opposed resistance to the constituted
authorities of the country ; and the act of submission cannot
be construed into an abandonment of the remedy expressly
given him by the very law which subjected his private proper-
ty to be taken for public uses, which remedy is a just com-
pensation " to be paid out of the next county tax, or out of
any monies belonging to the county funds." Nor can the In-
ferior Court impair the right of the injured party to have com-
pensation from the fund which the law prescribes, by attempt-
ing itself to provide a different one.

As to the manner in which the damages have been assessed,
the objection is more plausible than real. It is true the act
of 4th December 1799 directs the summoning of a jury for
that purpose, and this is the regular means provided by law.
But who seeks advantage of this supposed irregularity or ille-
gality in the proceedings of the court ? The court itself ; and
that too nearly two years after the award, made by commis-
sioners of its own appointment, had been entered upon its re-
cords as its judgment, and the clerk ordered to pay the
amount out of a particular fund. This proceeding however
was not illegal, and the parties were at liberty to waive the ir-
regularity. The only persons interested in this matter were
the Inferior Court, who had to pay the damages, and the Re-
lator who was to receive, and it was competent for them to
have agreed upon the damages ; or to have submitted by con-
sent to the verdict of a jury less than twelve. The course
pursued seems to have been without contestation, and to have
been adopted in conformity to the provisions of the act of
23d December, 1823, on this subject, which act expressly di-
rects the number three, and with a view of ending this busi-
ness without further trouble, two or three juries having failed
to agree.

It is the opinion of the court then, that the Relator has a

clear legal right to demand from the Inferior Court the sum awarded him as appears by its own records. But it is not enough that the Relator have a legal right. He must also be without a legal remedy to sustain an application for a mandamus. The King *vs.* The Archbishop of Canterbury, 8 East, 214.

The mandamus is a writ of high authority, and is placed by the Constitution of this state in the power of the Judges of the Superior Court alone. It was designed to be used *in subsidium justitiæ*, to supply any defect of legal remedies, and will never be resorted to, unless without it there must be a failure of justice.

In this case the Relator has had his land applied to public uses, by an order of the Inferior Court, which he could not resist. The Inferior Court has accepted the award of commissioners appointed by itself, assessing to the Relator four hundred and twenty-five dollars for his damages, and has ordered that sum to be paid out of a fund, upon which, by law, the debt is not chargeable, and which appears to be an unavailable fund; but refuses " to order the amount of damages so assessed to be paid out of the next county tax, or out of any public monies belonging to the county fund," according to the provisions of the law. If then there be no specific legal remedy for the Relator, his case is a strong one to require the extraordinary one of mandamus.

The counsel for the Justices contends, that such legal remedy exists. That it is by action in the Superior Court. And to avoid the absurdity of suing a court—a judicial tribunal, having concurrent jurisdiction with this in most matters, in an action at law, to recover a debt or damages, it is said the Inferior Courts are corporations, and as such may be sued. But no act creating them corporations has been shown. By the act of the 4th December, 1799, the Inferior Courts are made supervisors of roads, and they have powers as such conferred on them, and are made subject to their duties. Yet this will not create them corporations, which could only be done by an express act of the legislature for that purpose. We must then dismiss the notion of the Inferior Courts being corporations. For whether we consider them exercising the high judicial powers given them by the Constitution, or acting as overseers of the poor, supervisors of roads and bridges, or performing any one of the various duties attached to these tribunals, they must still be considered as courts not to be degraded to the level of mere corporations, and subjected to suits. No other remedy is attempted to be shown, or as it is believed can be shown, and the mandamus must supply the defect of justice. It is in fact the appropriate as well as the only remedy. The Superior Courts have the general superintendency of all inferior courts and magistrates, and will oblige them to execute that justice which parties are entitled

to receive from them, and which they are enjoined by law to do, and for this purpose have power to issue writs of mandamus, prohibition, scire facias, and all other writs which may be necessary for carrying their powers fully into effect. "The mandamus is now an established remedy, and every day made use of, to oblige inferior courts and magistrates to do that justice, which without such writ they are in duty and by virtue of their offices obliged to do." Bac. Abr. Mandamus, A. What was the Inferior Court or the Justices who compose it "in duty and by virtue of their offices obliged to do," on the amount of damages to which the Relator was entitled being ascertained, and what justice were they bound to render? A ready answer is furnished by the 2d sec. of the act before cited. "It shall be the duty of such court to order the amount of damages so assessed to be paid, &c. This order, as has been seen, they refuse to make, and inasmuch as without a mandamus the party would be remediless, it is a writ he may demand of right. But this is not a new case dependent alone upon principle. Precedent and authority are sufficiently abundant.

A mandamus was granted to compel the mayor and court of aldermen of London to give sentence or judgment in a case very like this in every respect. 3 Bac. Abr. 535. The only difference is, that in the case cited, the mandamus was to compel the court to give sentence or judgment; here it is to compel the court to give an order for payment. But this is a difference in name only. The object of each is the same, namely, to enable the injured party whose private property is taken for public uses, to have the redress provided by law. In the case of Sikes *v.* Ranson, 6 John. Rep. 279. the Supreme Court of New York on an application for a mandamus say; "We have the general superintendence of all Inferior Courts, and are bound to enforce obedience to the statutes, and to oblige subordinate courts and magistrates to do those legal acts which it is their duty to do." In Adams *v.* The Supervisors of Columbia, 8 John. Rep. 247. a mandamus was refused, but on grounds which make it an authority very much in point. That was an application to compel the defendants to audit an account of the plaintiff for medicine and attendance as a physician on a pauper. The court refusing a mandamus assign as a reason that "The supervisors of the county are not the board to ascertain whether the services have been actually and faithfully rendered to the pauper. That must be adjusted by the overseers of the poor who are in the first instance responsible to the persons rendering the assistance. The supervisors were only to pay such accounts as the overseers had adjusted and paid in pursuance of the order. As the account in question had never been adjusted, allowed, and paid, by the overseers of Hudson, the supervisors for that reason were not bound to notice it, *and on that*

*ground alone* the court refused to interfere. But we have given our opinion on the merits of the case so that when the account shall have been liquidated and settled by the overseers, and duly exhibited by them to the supervisors of the county, it may be paid without the necessity of an application to this court."

The cases of Wilson *v.* The Supervisors of Albany, 12 John. Rep. 414. and Hull *v.* The Supervisors of Oneida, 19 John. Rep. 259. are very similar. In both these cases the mandamus was refused alone because the plaintiffs could not show against the defendants specific legal rights. But in the case of Bright *v.* The Supervisors of Chenango, 18 John. Rep. 242. a rule was made absolute for a mandamus to compel the defendants to allow the account of the plaintiff as a legal charge against the county. The plaintiff was clerk of the county, and had purchased books for recording deeds and mortgages, and for the entry of common rules of the Court of Common Pleas ; and had as clerk performed for the county various services for which no specific compensation was allowed by law. Here was a legal right, without any specific legal remedy. See also the case of the King *v.* Sir J. Carter and others, 4 Term Rep. 246. and the King *v.* Hunt and others, 1 Strange, 42. But it is unnecessary to multiply authorities. The case is sufficiently plain, both upon principle and authority.

Let the peremptory mandamus issue.