# COURT OF APPEALS.

The People *ex rel.* Debenetti, respondent, agt. Moses D. Gale, Clerk of the Marine Court, appellant.

By the act of 1853, (*L.* 1853, *ch.* 617, § 5,) the marine court of the city of New York was authorized to appoint *general terms* at such times as it might deem proper, and to hear *appeals* at such general terms.

Before this act the only appeal was to the *common pleas;* and that court could, on appeal, open defaults and revise judgments for error of fact as well as of law.

By the fifth section of the act of 1853, this power (to open defaults, &c.,) was conferred on the justice (of the marine court) who tried the cause, with large discretionary powers, to wit, " *On such terms as may be just and proper* in *all actions* tried before him; and an *appeal may* be taken upon the *same* from a judgment entered by the direction of a single justice of the said court, to the justices thereof at general term, in the same manner and with the like effect as appeals in the supreme court from the decision of a single judge, to the general term; and the same costs and disbursements allowed as on appeals from justices' courts to the common pleas."

A judgment in the marine court is entered by the direction of a single justice, whether it be entered by default or on trial before the justice with a jury, or by him alone without a jury. The reference to the trial by a single justice was made only in contradistinction to trials at the general term.

The *review* before the *general term* is allowed as to all judgments, as well on questions of fact as of law, without regard to the mode of trial, except it may be *on default,* when the specific remedy is prescribed of an application to the single justice who tried the cause.

Thus the marine court is assimilated in its practice, and very nearly resembles, in that respect, courts of record.

This resemblance to those courts is made more complete if it is held, that when the act of 1853 says, " an appeal *may* be taken from a judgment entered by

The People *ex rel*. Debenetti agt. Gale, clerk of, &c.

direction of a single justice to the justices thereof at general term," it is *imperative* that such appeal *must* be taken before any appeal lies to the higher court—common pleas.

The provisions of the Code must be considered as so modified by the act of 1853 that the *return* to the common pleas shall be made by the *general term* of the marine court, and the appeal be made in twenty days after the judgment of the general term.

Therefore, the court of common pleas has no power or jurisdiction to hear an appeal upon a judgment of the marine court until it has been first heard at a *general term* of the latter court.

A *mandamus* is allowable whenever a party has a legal right, and is entitled to a specific remedy to enforce it, and a public officer, whose duty it is to afford that remedy, refuses to afford it.

The *clerk* of the marine court is not a mere ministerial officer, but is the *agent* by whom the judgments of the court are to be enforced, and in refusing to issue execution upon a judgment of that court, is liable to a *mandamus*, which is the proper remedy in such a case. [*This decision affirms that of the supreme court in the same case, ante p.* 5.]

*October Term,* 1856.

THE relator commenced an action in the marine court of the city of New-York against Minchin and others, and on the 5th of December, 1855, obtained judgment, on a trial before a single justice and a jury, for $250. On the 8th of the same month, the defendant in that action appealed to the common pleas of New-York, where the judgment of the justice was reversed—the relator appearing in that court, and making no objection to its want of jurisdiction, but contesting the matter on its merits. Judgment on this reversal was entered in the common pleas on motion of the relator, on the 5th of March, 1856.

The relator, insisting that the common pleas had no power to hear a case from the marine court on appeal, until it had been first heard at the general term of the last named court, applied to the clerk of the marine court to issue execution on the judgment in his favor in that court. The clerk refused, and he then applied to the general term of the marine court to compel the clerk to do so, but that court refused. He then obtained from the supreme court an alternative mandamus to the clerk, to compel him to issue the execution or show cause. On the return showing the above facts, an alternative mandamus issued at special term. This judgment was affirmed at the general

262 NEW-YORK PRACTICE REPORTS.

The People *ex rel.* Debenetti agt. Gale, clerk of, &c.

term of the supreme court. The appeal is from that judgment.

BENJAMIN T. KISSAM, *for appellant.*

CHARLES E. BIRDSALL, *for respondent.*

By the court—MITCHELL, Judge. The legislature has deemed it expedient lately, greatly to increase the powers of the marine court. Its jurisdiction was formerly limited, in most cases, to recovery in an amount not exceeding $100. In 1852, its powers and importance were much increased; its three justices were made to hold their offices for six years, and their jurisdiction extended so that a recovery could be had before them for $250, when before it was limited to $100. (*Laws* 1852, *ch.* 339.) In 1853, recoveries were allowed to be had for $500, and to induce the bringing of actions of assault and battery, false imprisonment, malicious prosecution, libel and slander, in that court alone, it was enacted that where such actions should be prosecuted in any other court in the city of New-York, the costs should be limited to the amount which would have been recovered in that court. (*Laws* 1853, *ch.* 617.)

That court was also authorized, in the same manner as the court of common pleas and the superior court of that city, to appoint the officers necessary to attend it, and to order the sheriff to supply it with room, attendants, fuel, lights and stationery, if the supervisors should neglect that duty. (*Laws* 1853, *ch.* 229.)

Previous to the year 1853, the court had no general term; causes were tried before a single justice, but there was no power of reviewing them before the justices of the same court at a general term. The only appeal was to the common pleas, and that court could, on appeal, open defaults and revise judgments for error of fact as well as of law. (*Code,* § 366.)

The great increase of litigation in the city made it proper (in the view of the legislature) to increase the dignity and power of the marine court, to relieve the common pleas to some extent. Accordingly, by the act of 1853, (*ch.* 617, § 5,) the marine court was authorized to appoint general terms at such times as it might

deem proper, and to hear appeals at such general terms. Before this act, the court of common pleas, as before stated, was to open defaults. By the 5th section of this act this power was conferred on the justice who tried the cause, with great discretionary power, "on such terms as may be just and proper." The remaining parts of that section led to the present controversy. It is necessary to refer to nearly the whole of it. It is as follows :—

" Any one of the justices of said court shall have the power to open defaults on such terms as may be just and proper in all actions tried before him ; and an appeal may be taken upon the same from a judgment entered by the direction of a single justice of the said court to the justices thereof at a general term, in the same manner and with the like effect as appeals in the supreme court from the decision of a single judge to the general term, and the same costs and disbursements allowed as on appeals from justices' courts to the common pleas."

Section six repeals all acts and parts of acts in conflict with this act.

It was at one time contended that the appeal to the general term lay only on ·a judgment by default. Both the common pleas and the supreme court agreed that so narrow a construction of the act could not be allowed. A general term would hardly be created for so trivial a purpose, and especially in a matter which is always considered almost, if not quite, discretionary in the primary tribunal. The appeal allowed is not from an order, but from a judgment entered by a single justice. The opening of a default, or the refusal to open it, is an order, merely, and not a judgment. The expression—"an appeal may be taken upon the same from a judgment entered by the direction of a single justice," must be read, " an appeal from a judgment entered by the direction of a single justice may be taken upon the same." This transposition carries out the purpose of the legislature, and changes none of the words in the sentence. The same conclusion was arrived at in the supreme court and common pleas—they holding that the words, " upon the same," referred to the previous words, " all actions."

A judgment in the marine court is entered by the direction of a single justice, whether it be entered by default, or on trial before the justice with a jury, or by him alone without a jury. The reference to the trial by a single justice was made only in contradistinction to trials at the general term. The review before the general term is thus allowed as to all judgments, without regard to the mode of trial, except it may be on default, when the specific remedy is prescribed of an application to the single justice who tried the cause.

In this, also, the common pleas and the supreme court agree: the points in which they differ are, that the common pleas hold that the general term has no jurisdiction as to matters of fact— the supreme court makes no such distinction. The common pleas hold that the unsuccessful party has his election to appeal to the general term of the marine court or to the common pleas. The supreme court hold that he must first apply to the general term of the marine court, and pass through it before he can reach the common pleas—the latter view being really more complimentary to the common pleas, and nearly completing its resemblance to the highest court in the state, so far as relates to its control over the marine court.

The construction upheld by the common pleas would lead to a confusion, which ought not to be attributed to the legislature if it can be avoided. A judgment may be rendered by a justice for $250: the plaintiff may appeal to the general term, claiming that he should have $500, and may succeed there, and the defendant may appeal to the common pleas, and the judgment for $250 be affirmed, or it be adjudged that the plaintiff had no cause of action. Again, the defendant may have relied on a set-off, and that may have been allowed him before a justice, and yet judgment for a balance be given for the plaintiff. The defendant may appeal to the common pleas, insisting that he should have judgment for his whole set-off, without anything being allowed to the plaintiff; and the plaintiff may appeal to the general term, claiming that the defendant should have no set-off; each court may decide in favor of the appellant. If each party may elect his tribunal, such may well be the result;

The People *ex rel.* Debenetti agt. Gale, clerk of, &c.

the judgments of each tribunal being equally authorized by law, would be equally valid. The common pleas could not claim superior authority for its judgment, for, although it is an appellate court, so is the general term an appellate tribunal, and when it acts, its appeal, according to the decision of the com mon pleas, is final, and beyond the power of the common pleas to control. The general term of the marine court may insist that, if its jurisdiction is such that no appeal lies from it to the common pleas, it cannot be bound, and has no power to avoid its own judgment, even with a view to conform it to that of the common pleas.

There has been a growing disposition to produce simplicity in the courts, by having as much similarity in the practice and organization of the various courts as practicable. The act of 1853 was passed with this motive, and to elevate the rank of the marine court. With the latter object, the justices of that court were made to hold their offices as in the common pleas and superior courts, for six years, and powers of control as to their room, fuel, attendants, and stationery, and in the appointment of their officers, were given to them, like those given to the two other courts. With the first object, power to open a judgment by default was conferred on a single justice—(before, the common pleas alone had this power)—general terms were established, and an appeal given to them in all trials; thus making a near approach to the practice in the courts of record.

This resemblance to those courts is made more complete, if it is held that when the act of 1853 says, "an appeal *may* be taken from a judgment entered by direction of a single justice to the justices thereof at a general term;" it is imperative that such appeal *must* be taken before any appeal lies to the higher court. This is analogous to the appeal to the court of appeals from all the courts of record in the state—no such appeal lying until recourse is first had to the general term of the court below, and its judgment is rendered. (*See Gracie* agt. *Freeland,* 1 *Com.* 228.) It is also in conformity to the ordinary course of practice, and to sound sense, not to allow an appeal to a higher court while redress may be had in a higher branch

of the court below than that which rendered the first judgment.

It has been argued, that the language of the Code is such that it allows an appeal to the common pleas only from the judgment of a single justice, as the notice of appeal is to be served "on the justice," and the costs of appeal must be paid to "him," in the singular number. The singular number was then used because the only judgments that could be then rendered in the court below were rendered before a single justice; but now the court below can render judgments also at a general term; and the complete appellate power of the common pleas over the inferior tribunal is not to be taken away because the singular number alone was used at a time when that number alone was appropriate. The controlling power of that court is as essential to the symmetry of our judicial system as it is important for the sake of justice. It never could be the intention of the legislature to allow a court not of record to have a right, at the election of any party, to pronounce a judgment from which there could be no appeal, when the original judgments of the highest courts of record are all subject to two appeals—one to the general term of their own court, and the other to the court of appeals. The provisions of the Code must, therefore, be considered as so modified by the act of 1853 that the return to the common pleas shall be made by the general term of the marine court, and the appeal be made in twenty days after the judgment of the general term.

The appeal that is allowed to the general term is, in general terms, "from a judgment entered by the direction of a single justice." No distinction is made whether the trial has been before a jury, or before the justice alone, or before referees, as is made in the Code as to appeals from the special term and the general term of the courts of record. There, in express terms, and in the only clause in which the right of appeal is given, the limitation is presented, and it declares "an appeal upon the law may be taken to the general term from a judgment entered upon the report of referees, or the direction of a single judge

of the same court, in all cases, and upon the fact, when the trial is by the court or referees."

This section thus defines the cases in which appeals lie in those courts, and excludes from those cases trials before a jury, where the question to be raised on appeal is one of fact and not of law. This is not, as has been supposed, a statement of the manner or effect of the appeal, but of the cases in which the appeal lies. The " manner " relates to the mode of proceeding in effecting an appeal, the notice and security to be given; the " effect " relates to the consequences produced by the appeal, as under what circumstances it shall operate to stay proceedings. " Effect " is the appropriate word to describe a result that follows after the thing previously spoken of [the appeal] is completed, and would be quite inappropriate if used to define the cases in which such thing might be done. The fifth section, therefore, allows the appeal to the general term as well on questions of fact as of law. It would be most extraordinary if such were not the case. It could not be, that the law which allows an appeal to the higher court, on a default and on questions of fact as well as of law, and which gives the extraordinary power to that higher court to examine witnesses originally, when there was an error in fact in the proceedings not affecting the merits, (*Code,* § 366,) should allow an appeal to the general term of the inferior court, in the more difficult of the matters thus cognizable by the higher court—questions of law—and not allow it in the more easy questions of fact; especially as those last in our system were never examinable in a higher court, except in equity cases and appeals from justices' courts.

The relator's appearing in the common pleas and arguing his cause there, on the merits alone, did not give jurisdiction to that court; such acts might waive a mere irregularity, but could not confer jurisdiction.

The appellant also insists that mandamus is not the proper remedy in this case. Whatever difficulty there may be in determining whether a mandamus is allowable in some cases, it is allowable whenever a party has a legal right, and is entitled to a specific remedy to enforce it, and a public officer, whose duty

it is to afford that remedy, refuses to afford it. This is pecu-
liarly proper where the officer is not a mere ministerial officer,
(as a collector of taxes,) but, as in this case, is the agent by
whom the judgments of the court are to be enforced: he be-
comes part of the machinery of the court, without whose action
the judgment of the court is arrested in its effect. It cannot be
that the judges themselves are liable to this writ, if they will
not proceed and pronounce judgment, and that the officer who
has no discretion to exercise, but is bound to issue the execu-
tion founded on the judgment of the court, can, in effect, make
void the judgment by refusing to issue the execution founded
on it; and that the judgment-creditor is to be left without any
specific means to obtain the execution which the law entitles
him to.

In *Onderdonk* agt. *The Supervisors of Queens County*, (1 *Hill*,
195,) the court said, that no certiorari, mandamus, or prohibition,
on account of an alleged erroneous item in the assessment of
taxes, could be issued to the collector, as he was a mere minis-
terial officer. The remark was correct in its connection; as
such officer, he had no control over the assessment-roll, and no
power or right to present to the court the facts, which would
show whether the item objected to was lawfully included or not.
The application was to *prevent* his acting where his warrant
required him to *act;* if it had been to compel him to execute
the warrant, it probably would have been granted. The clerk
of the *court* is more than a mere ministerial officer, as he is an
officer of the court, charged by law with the performance of a
specific duty—that of furnishing the specific remedy by execu-
tion on judgments in his court.

In *Smith, &c., pier proprietors in the City of Albany*, agt. *The
Comptroller of the State*, (18 *W.* 659,) a mandamus was granted
to compel the comptroller to pay certain tolls collected by him
for the state, and to which the pier proprietors were entitled.

In *The People* agt. *The Mayor of New-York*, (10 *W.* 393–7,)
the court, on the merits, refused the relief sought; but held
that *mandamus* was the proper remedy to compel the corpora-
tion of New-York to execute a lease on a sale for taxes; and

NEW-YORK PRACTICE REPORTS. 269

The People *ex rel.* Debenetti agt. Gale, clerk of, &c.

that it was no objection that relief might be had in equity, or by indictment. In that case an action for damages would also have lain; but NELSON, Ch. J., said, that "whenever a legal right exists, the party is entitled to a legal remedy; and when all others fail, the aid of this may be invoked." This case, and others, show that when a specific duty is imposed by statute on public officers, they may be compelled to execute it by *mandamus,* although an action for damages might also lie.

In *The Bank of Utica* agt. *The City of Utica,* (4 *Paige,* 399,) the chancellor expressed the opinion that the bank had a perfect remedy at law, by an application to the supreme court for a mandamus to compel the common council to correct their assessment and taxation of the property of the bank, if it was illegal.

In *Bright* agt. *The Supervisors of Chenango County,* (18 *J. R.* 242,) the court granted the writ to compel the supervisors to audit and allow the account of the clerk of the county for books purchased by him for recording deeds, &c.

In *Hall* agt. *Supervisors of Oneida County,* (19 *J. R.* 259,) the court refused the writ, because it appeared that the services for which the applicant (a physician) claimed pay had been rendered gratuitously, and so there was no legal claim for them; but the court held that, "if the claim were legal, there was no doubt of their jurisdiction to instruct and guide the supervisors in the execution of their duty by mandamus—not to control their discretion in judging what is a reasonable compensation for such services, but to compel them to admit the claim as a county charge, and to exercise their discretion as to the amount." (*p.* 262.)

The office of the writ, and its extent, are well stated by Chief Justice SPENCER, in *The People ex rel. Wilson* agt. *The Supervisors of Albany,* (12 *J. R.* 415,) that it is "to require the persons to whom it is directed to do some particular thing, which appertains to their office or duty, and which the court issuing it supposes to be consonant to right and justice; and that if the party making the application has a legal right, and no other specific legal remedy, the writ generally goes."

The latter part of this opinion is to be understood in connection with the former, as applying only to matters appertaining to a public office or duty, not to rights between private individuals merely, when neither holds a public office.

The judgment of the general term should be affirmed with costs.