taking the position most favorable to the plaintiffs, if we assume that they had a trade-mark in the words "Boss Raw Edge" and "Stetson Style," we do not think that the course pursued by the plaintiffs— in the one instance waiting more than seven years after knowledge had been brought home to them of the acts complained of before bringing suit, and in the other suggesting and inducing the wrongful act—presents any such equitable consideration as should move the court to grant injunctive relief.

We think. therefore, that the case was properly disposed of below, and that the judgment should be affirmed, with costs. All concur.

(23 App. Div. 61.)

GHIGLICNE v. MARSH, Sup'r, et al.

(Supreme Court, Appellate Division, Second Department. December 7, 1897.)

1. TOWN BONDS.
    Under the county law (Laws 1892, c. 686, §§ 69, 70, amended by Laws 1896, c. 178), which authorizes towns to borrow money to improve their highways, and to issue "obligations" therefor, a town has power to issue long-term, negotiable bonds.

2. SAME—ISSUE AT PAR.
    Under the same sections, power conferred on the county board of supervisors to authorize a town to incur a given indebtedness involves the power to authorize the issue of bonds for the full amount at par, even though the sale may result in producing a fund larger than the authorized indebtedness.

3. SAME—GOLD CLAUSE.
    The same power authorizes the inclusion in the bonds of a clause making principal and interest payable in gold coin.

4. SAME—PAYMENT OF INTEREST.
    It also authorizes a direction that the interest on the bonds may be paid from the proceeds thereof until the tax provided to pay the same shall be collected; the money so used to be refunded from the receipts of the tax levy.

5. SAME—IMPROVEMENT OF VILLAGE ROADS.
    Upon the application of the officers of the town of Southfield, together with the consent of the trustees of the village of Edgewater, the county supervisors authorized the town to construct, repair, etc., certain highways, some of which were situated in the village, and to borrow a specified sum for that purpose, and issue its bonds therefor. *Held* that, under the county law (sections 69, 70), the issue of bonds for the improvement of the roads of the village, as well as the town, was authorized.

6. TOWN SUPERVISORS—COMPENSATION.
    If the duty of taking charge of the repairing and construction of roads, and disbursing the money to be expended therefor, is, as it validly may be, imposed upon the town supervisor, as such, by the county supervisors, the provision of Town Law, § 178, as amended by Laws 1897, c. 252, allowing two dollars a day for services for which no fee is allowed by law, applies.

7. SAME.
    In such a case a provision, by act of the county supervisors, that the .town supervisor shall receive a commission on all moneys received and disbursed upon such work, is void, but in no wise affects the validity of the other parts of the act authorizing the work, and directing the issue of bonds.

Appeal from special term.

Action by Maria Ghiglione against Nathaniel Marsh, as supervisor of the town of Southfield, and·others. From an order making per-

manent a temporary injunction pending a determination of the action, defendants appeal. Reversed.

Argued before GOODRICH, P. J., and CULLEN, BARTLETT, HATCH, and BRADLEY, JJ.

George J. Greenfield (William M. Mullen, on the brief), for appellant Marsh.

Theodore F. Lozier, for appellant Jones.

Benjamin A. Gould (Frederick P. Delafield, on the brief), for respondent.

HATCH, J. The facts of this case, as they appeared before the court upon the return of the order to show cause why the temporary injunction should not be made permanent pending the action, are without dispute. The questions presented are of law, and their disposition will determine the controversy. The action is brought by a taxpayer, and its purpose is to restrain the issue and delivery by the town of Southfield, through its supervisor, of 140 bonds, of $1,000 each, to the Edward C. Jones Company; it being the purchaser at a public sale of the same. The bonds in question were issued pursuant to, and under the authority contained in, the county law, upon the application of the commissioners of highways and town board of the town of Southfield, to the board of supervisors of Richmond county, coupled with the consent of the trustees of the village of Edgewater, in which village some of the highways proposed to be improved are situate. No claim is made but that the proceedings taken by the above-named town officers and by the trustees of Edgewater conformed to the law, and authorized the board of supervisors to act, if the law conferred upon the board the power to authorize the issue of bonds for the proposed improvement. The application by the officers of the town, and the consent given by the trustees of the village of Edgewater, is, in form, a request to authorize the town of Southfield to construct, build, repair, lay out, widen, grade, or macadamize certain public highways, particularly enumerated in the application; also, "to borrow the sum of one hundred and forty thousand dollars, for and on the credit of said town of Southfield, for" the purposes specified. In pursuance of the request, the board of supervisors passed an act authorizing the improvement proposed, and permitting the town to borrow on its faith and credit $140,000; the same to be a charge upon the taxable property of the town. By the third section of this act the town was directed to prepare bonds in the aggregate value of $140,000; each bond to be of the par value of $1,000, and bear date July 15, 1897, with interest at the rate of 5 per cent. per annum, payable semiannually, on the 15th days of February and July in each year; principal and interest payable in gold coin of the present standard of weight and fineness, or its equivalent,—and to mature 30 years from their date. The bonds, when issued, were to be delivered to the supervisor of the town for sale, and the proceeds received and disbursed by him for the purposes specified. Such supervisor was designated in the act as the person to take charge of the work and expend the money, and for his com-

pensation he is to receive a sum equal to one-half of 1 per cent. for all moneys received, and a like sum for all moneys disbursed. The act also authorizes the use of the money received upon a sale of the bonds to pay any interest which may become due and payable prior to the collection of the taxes provided for in the act for the payment of the principal of the bonds and interest; any money so used to be refunded from the money received upon the tax levy. In pursuance of the act, the bonds, to the number of 140, were prepared; and a public sale of the same was advertised by the supervisor, resulting in a sale to the Edward C. Jones Company upon their bid of par and 25.277 per cent. premium,—the premium amounting to $35,-387.81. The aggregate amount realized upon the sale was $175,-387.81. The plaintiff seeks to have the proceedings which have led to this result annulled, and the bonds declared illegal and void, and to have the supervisor restrained perpetually from delivering, and the Jones Company from receiving, them.

There are several grounds stated why this result should be the judgment of this court. The first, and the one which attacks the proceeding at its inception, is that the town has no power to issue long-time, negotiable bonds, under the provision of the county law. It may be conceded that, unless there exists some statutory authority authorizing the issue of bonds for a public improvement by a municipality, none can be issued, and that a mere grant of power to borrow money for municipal purposes does not confer such authority. We are therefore to see if the necessary authority is found in the provisions of the county law relied upon to sustain what has been done. By section 69 of the county law (Laws 1892, c. 686, amended by chapter 178, Laws 1896), authority is conferred upon boards of supervisors, upon a proper application by constituted authority, to authorize a town to improve its highways, either by construction of new ones, or the repair of those already existing; and to this end the town is authorized to borrow money as may be necessary for such purpose. By section 70 of the same act, it is provided that:

"The board shall, from time to time, impose upon the taxable property of such towns sufficient tax to pay such obligations as they shall become due. The supervisor and town clerk shall each keep a record, showing the date and amount of the obligations issued, the time and place of their payment, and the rate of interest thereon. The obligations shall be delivered to the supervisor of the town who shall dispose of the same for not less than par."

It would seem that the language of these two sections, when construed together, authorizes the improvement upon the credit of the town, and makes provision for the payment of the debt to be incurred. The language provides that the credit of the town shall be pledged. The manner in which it shall be pledged is by the issuance of an obligation of the town, and such obligation shall specify its amount, the rate of interest, and the time and place of payment; and the supervisor and town clerk are required to make a record of it. The obligations, when issued, are to be delivered to the supervisor, and by him be disposed of at not less than par. The language also contemplates that there may be more than one obliga-

tion.  It is quite clear that bonds in the form and of the character of the bonds in the present case answer the requirements of this language, and fall within its terms.    The word "obligation" imports an instrument of the character of a bond.    Indeed, it is of much wider significance, and may embrace every character of liability by which one person may be bound to another.    Its legal signification, however, has been brought within quite well-defined limits.    "Lord Coke observes that 'obligation' is a word of large extent, but is commonly taken in the common law for a bond containing a penalty, with condition for payment of money, or to do or suffer some act or thing."    2 Burrill, Law Dict.    Blackstone makes use of the word as synonymous with "bond."    2 Bl. Comm. p. 340.    And such is the view adopted by the supreme court.   .Strong v. Wheaton, 38 Barb. 616.    The language of the statute also imports that the obligation which may be issued shall provide for a more or less extended credit, and evidently contemplates a long-term credit.    This is made more plain when this language is considered with other provisions of the county law.    By section 12 of the county law, the board is given general power to fund any debt of the county not represented by bonds, and borrow money for the erection of county buildings and the purchase of sites, and issue obligations therefor, and also to allow towns to borrow money for town purposes on its credit, and issue its obligations, in the manner authorized by law.    By section 13 a limitation is placed upon a town in the issue of its obligations,—that it shall not exceed 10 per cent. of the assessed valuation of the real estate, etc.    It is quite evident that the obligations referred to in these two sections embrace long-term bonds, or, rather, a long extension of credit.    This is made still clearer by a reference to the next section (14), where provision is made for the form of such obligations, and their terms, which must not exceed 30 years, or the rate of interest the legal rate.    No reason is suggested why any different signification should be placed upon the obligations here spoken of than' those mentioned in section 70.    Indeed, no other authority is found, aside from that which appears in section 14, where the character of the obligation which may be issued is defined, and it evidently embraces those provided for in section 70.    Under the former provisions of law, from which the county law was, in large measure, taken (Laws 1869, c. 855, and amendments thereto), the authority was to issue obligations, and the extent of credit was 10 years.    It is true that this language is left out of section 70.    Indeed, the length of credit is changed entirely, but the subject-matter of the act and its amendments finds place in the county law.    The arrangement into sections is different, and the phraseology is changed in some respects; but the substance of the whole is re-enacted therein, and the law remains substantially as before.    Under the prior law, bonds of the character now involved were authorized.    People v. Tompkins, 64 N. Y. 53.    We have before had occasion to say, speaking in respect of a similar subject, that "change in phraseology does not indicate an intent to change the law, in the absence of substantive language or circumstances indicating that a different rule was intended to be established."    May v. Bermel, 20 App. Div.

53, 46 N. Y. Supp. 622. We find no such intent in the change which has been made, and conclude that the authority is sufficient to authorize the issue of the bonds which have been issued. The case of Brenhan v. Bank, 144 U. S. 173, 12 Sup. Ct. 559, relied upon by the respondent, is not in conflict with this view. In that case there was simply the general power to borrow money. As we have seen, in the present case there is not only authority to borrow the money, but authority to issue the obligation.

It is further urged that no authority exists to sell more bonds than was sufficient, with the premium, to realize the sum of $140,000. It is clear that the debt authorized to be incurred does not exceed the amount authorized, and no greater obligation is created against the town than would have been created had the bonds been sold at par. There can be no question but that the board of supervisors possessed the power to authorize the issue of 140 bonds, of the par value of $1,000 each; and, if they have done this, then the fact that the town has been sound enough in its credit to realize a sum beyond the face value of the bonds furnishes no reason for vitiating the sale, and it can have no effect upon the power of the board to authorize the creation of the indebtedness. By reference to section 3 of the act passed by the board, it clearly appears that the language contemplates that the bonds authorized are to issue at par value, and these bonds have been issued in accordance with the direction therein contained. The board possessing the authority, and the officers charged with the duty having followed it, we see no basis for the court's interference. We agree with Mr. Justice Gaynor in Weil v. Bermel (not reported), that "the authority is to incur an indebtedness of that amount, and thereby get, not merely that amount, but as large a fund as it will produce." The question before the learned justice in that case was the precise question now before us. The respondent relies upon Commissioners v. Zimmerman (Ky.; not yet officially reported) 41 S. W. 428. The case, however, does not apply. The question was the same in both cases, i. e. of power. In the Kentucky case the authority was to refund and pay off a particular amount. It was clear that only the amount necessary for that purpose could be raised, and, when bonds were issued in an amount greater than was necessary to accomplish that result, the authority was exceeded. In the present case the authority existed to issue and sell the bonds. It was exercised in conformity with the grant of power, and, having been so exercised, the court has no business with it, as the act of the officers is fortified by authority at every point. The excess by way of premium upon the sale of the bonds must be regarded as an incident to the exercise of the power authorized.

Nor do we think that the direction by the board to pay the interest upon the bonds out of the proceeds, until the tax provided to pay the same should be collected, is void, and beyond the power of the board to direct. Taxes can only be collected at specified times, and in a specified manner; and it was of far greater importance to the town that its credit should be maintained by the prompt payment of its interest, than that it should be dishonored by its default.

This direction was made in order that such result might not happen. It was to meet a condition created by the issuing of the bonds, and was so far an incident to the exercise of the power in creating the indebtedness that it was proper to make temporary provision therefor. Its effect was not to deprive the town of any of the money, or its benefits. It was a simple provision in anticipation of the tax. It was said by Judge Selden in Ketchum v. City of Buffalo, 14 N. Y. 364:

"Municipal corporations, especially, obtain their funds, for the most part, periodically, by means of annual taxation; and it is impossible, by any degree of care, to adjust their means to their wants so accurately but that exigencies will arise, rendering necessary a resort to the credit of the corporation."

We think this language applicable to the present situation. If, however, the direction be held void, it would not in the slightest operate to defeat the validity of the bonds. It is quite severable from the other portions of the act, and, like an act of the legislature, which may be supported in part, is only bad to the extent that the power is exceeded. People v. Bull, 46 N. Y. 57. But we think it a valid exercise of power incidental to the authorized scheme.

It is further claimed that there is no authority for the issue of bonds to improve the roads within the village of Edgewater. In support of this contention, respondent relies upon Bull v. Southfield, 14 Blatchf. 216, Fed. Cas. No. 2,120. It may be assumed that this case correctly construed the statute as it then existed. But since that time the statute has been amended to meet the conditions suggested by that decision, and the law as amended now forms a part of section 70 of the county law. The consent of the trustees of the village was obtained, and forms a part of the record in the case. Besides, section 69 now contains the provision that the board may act upon the application of any town liable, or to be made liable, to taxation, in whole or in part, for constructing, etc. The two sections, as now existing, abundantly answer this objection.

By section 6 of the act of the supervisors, the defendant Marsh, who is the supervisor of the town, was authorized to retain, by way of compensation for his services, one-half of 1 per cent. for all moneys received from the proceeds of the sale of the bonds, and a like sum for all moneys disbursed in prosecuting the improvements contemplated. It is now claimed that this provision was beyond the power of the supervisors to make. The answer must depend upon whether the duties imposed were devolved upon him as supervisor, for which he receives compensation under general provisions of law. The supervisors of the county of Richmond are paid a fixed sum annually for services as such officers. Services rendered the town, where authorized by law, shall be a town charge. By section 178 of the town law, as amended by chapter 252 of the Laws of 1897, when no fee is allowed by law for the service a supervisor shall receive two dollars per day for services rendered the town. While it is true that no duty, beyond receiving the bonds, disposing of them, and paying over the moneys to the proper person, is devolved upon the supervisor by the provisions of the statute, yet the duties which are imposed by the act of the supervisors are duties which Marsh per-

48 N.Y.S.—39

forms as supervisor. They are imposed upon him as such official, they are performed for the town, and no compensation is provided therefor by any provision of law. It would seem, therefore, that the provision of the statute for per diem compensation for services rendered the town by a supervisor has direct application, and embraces the case, as the act contemplates that the duties to be performed are official, and, as supervisor, they will devolve upon his successor, and when Marsh ceases to be supervisor he will cease to have charge and control of the work and of the money. It may be true that the board of supervisors could devolve the supervision of the work and the disbursement of the money upon an officer incumbered by no other inconsistent official obligation. Under such circumstances, if there was no provision of law for compensation, the law would imply a right to reasonable compensation, for the service. Bright v. Supervisors, 18 Johns. 242; People v. Common Council of Kingston, 101 N. Y. 82, 4 N. E. 348. But this rule has no application to the defendant Marsh; for, as we have seen, the service which he renders he renders for the town as supervisor, and for such service his compensation is fixed by law. This part of the act is therefore void. But, as we have already seen, it in no wise affects the validity of the other parts of the act, as it is severable therefrom, leaving such other parts to stand as a valid exercise of power. So far as an attempt was made to fix the compensation of the engineer by the town board is concerned, it was an absolute nullity. No power in this regard was conferred upon such board, and its act was of no more effect than the act of any other three persons upon the same subject.

It is not necessary that we should now determine whether the drainage bonds are valid outstanding obligations or not. We are quite clear that they are not obligations of the town of Southfield; for, by section 2 of chapter 303 of the Laws of 1871, no portion of the cost, expenses, land damages, and compensation provided for in the act shall be assessed to, or paid by, any incorporated village, town, or county in which the lands to be drained are situated, unless a majority of the board of trustees, in case of a village, a majority of the town board, in the case of a town, and a majority of the board of supervisors, in the case of a county, shall have joined in the petition therefor. It is not claimed that the town board of this town, or any member of it, joined in the petition which instituted the proceeding, or in any other. Consequently no liability against the town could be created. This leaves the debt of the town, including the present bonds, within the constitutional limit. The claim that no authority exists for issuing a bond payable in gold is answered by the decision in Blanck v. Sadlier, 153 N. Y. 551, 47 N. E. 920.

It follows from these views that the act of the board of supervisors was a valid exercise of legislative power, and that the bonds issued thereunder are valid obligations of the town of Southfield.

The order appealed from should be reversed, and the injunction vacated, with $10 costs and disbursements. All concur.