# SUPREME COURT.

PATRICK McGOVERN, appellant agt. THE WESTERN RAILROAD COMPANY, respondent.

An action for work, labor and services, done and performed by the plaintiff for the defendants under an agreement made with a *sub-agent* of the defendants, whose acts in such cases to be valid, are subject to the approval of a *general agent* of the defendants cannot be maintained, where notice has been given to the plaintiff by the general agent of the disapproval of such contract.

*Albany General Term, December,* 1864.

*Before* PECKHAM, MILLER *and* INGALLS, *Justices.*

THIS is an appeal from a judgment entered upon the report of a referee in favor of the defendants. The action was brought by the plaintiff to recover compensation for extra services rendered by the plaintiff for the defendants, in the capacity of night watch, Sunday nights, at the defendants' depot at Chatham Four Corners, from January 8th, 1854, to April 1st, 1858, at one dollar per night, which the plaintiff claims was agreed upon between himself and one Lee, the agent of the defendants. The plaintiff entered the defendants' employment on the 24th February, 1848, as a night watch during *week days*, and so continued until the 8th January, 1854, from which period until the 1st April, 1858, he continued in the defendants' service in the capacity of night watch every night during the week. The plaintiff received from the defendants wages varying from $20 to $34 per month, and signed the pay rolls from time to time, as the payments were made, until the close of his service. Lee, the person with whom the plaintiff claims to have made the agreement, died in February, 1854, about a month after the making thereof. The plaintiff testifies that he informed Mr. Day, who succeeded Lee, of the agreement, and that Day stated to him that he would represent the matter to Mr. Gray, the general superintendent,

and subsequently informed him (plaintiff) that he had done so, and that Gray gave him no satisfaction in regard to the matter.  The plaintiff further testified, that after Day left he was succeeded by one Knight, to whom he explained the matter, and Knight promised to confer with Mr. Gray in relation to the matter, and that Knight subsequently informed him that Gray gave him no satisfactory answer. The plaintiff continued in the defendants' employment till April 1, 1858, receiving his pay and signing the rolls.

Day was examined as a witness for the defendants, who testified in substance, that the plaintiff informed him of his claim for extra compensation, and that he spoke to Mr. Gray in relation thereto, who informed him that the plaintiff was receiving his pay all the while, and if he was not satisfied with his compensation he might quit the employment; that he communicated to plaintiff Mr. Gray's answer.

Gray was also examined as a witness, and testified in substance that Lee had no authority to employ the plaintiff to render the service except by his (Gray's) approval, which was never given ; that plaintiff spoke to him several times in reference to extra compensation for the Sunday night watching, and that he replied to plaintiff that nothing would be paid.

Benjamin F. Knight was also examined as a witness, and stated that he succeeded Day in the agency, continuing from April, 1856, to April, 1859 ; that in less than a month after his agency commenced, plaintiff spoke to him in reference to the agreement with Lee for extra pay, and desired him to call Mr. Gray's attention to it ; that he did speak to Gray, who replied that it was an old story which he supposed had been settled long ago ; that Day and others had spoken to him about it before, and that he acknowledged no such contract, and had not authorized any agent to make any such arrangements, and if plaintiff was not satisfied with his wages he was at liberty to leave.

Knight further states that he informed plaintiff of what Gray said, and plaintiff replied, it was pretty hard.

P. W. BISHOP, *for plaintiff and appellant.*

I. Plaintiff may recover notwithstanding his signing the pay rolls. They are simply *receipts*, and open to explanation (1 *Phil. Ev.* 94).

2. The 'defendants were bound by the contract made by plaintiff with Lee, their agent. He was acting within the scope of his authority. It was almost an every day occurrence for him to discharge and hire men for defendants. And from these known and public acts exercised by him for a number of years, plaintiff had a right to infer a proper authority.

3. Besides, if Lee had not proper authority to contract with plaintiff, it appears that plaintiff performed this work under the special directions of Henry Gray, defendants' superintendent, whose authority is unquestioned.

4. According to the limited agency which defendants contend Lee was clothed with, he had a right to initiate a contract, and that of course would be good until disapproved of by defendants.

5. If plaintiff was not entitled to recover for the full term claimed by him, he was at least entitled to recover for services down to the time when he was informed that if he was not satisfied with the wages he was getting that he could leave.

6. But if the contract with Lee was a valid one, he is entitled to recover all he claims.

7. Plaintiff was never discharged by defendants from the performance of the Sunday night watching, and the Sunday night watching was beneficial to defendants, and performed by contract with Lee, and by directions of the superintendent, to save their wood from being stolen.

8. The plaintiff for years before had been required to

watch week day nights, and received *monthly* wages.  Could the superintendent direct his agent to have plaintiff watch Sunday nights also without compensation ?   I think not. But if he could do so he did not ; he says no such thing to Lee when he directs him to put plaintiff on Sunday nights, and besides Lee agrees to pay for such services.

9.  It is claimed by defendants that plaintiff was a seven-day man, as it is termed in railroad parlance, yet Gray swears that it appears from the pay rolls upon which plaintiff's name appears, that the men are month-men or day-men.   Besides, defendants would not permit plaintiff to show that he did not receive the usual wages of seven-day men.   The printed pay roll shows he at least was a month-man.

10.  The wages of the month-men and day-men were fluctuating constantly, and the pay rolls upon which plaintiff's name appears show that.   Not so with seven-day men. This fact shows that plaintiff was not a seven-day man, and never received pay as such.   Besides, during all that time he was trying to get his extra pay, and down as late as March, 1858, he applied to Gray for it, and Gray said he would see about it.

II.  The referee erred in striking out the evidence of Hurlbut in reference to Lee's hiring the plaintiff.   The admissions testified to were made while acting within the scope of his authority (1 *Phil. Ev.* 99 *to* 102, 105-6).

2.  The referee erred in rejecting the evidence of Clarke, to show that he took the place of plaintiff as watchman at $30 a month, and that there was no increase in the wages of the other men employed then by defendants.   This evidence was material to show plaintiff was a month-man, and not a seven-day man as now claimed by defendants.

3.  The referee erred in receiving the evidence of Gray as to Lee's authority.   The question was clearly wrong in form, being leading.

4.  The referee erred in excluding the evidence offered

by plaintiff to show that he did not receive the usual wages of men who watched every night. This was material in establishing the fact that plaintiff only received his usual monthly wages, and that he was not paid as a seven-day man.

III. The third statement of facts found by the referee, is not sustained by the evidence in the case. The contract for Sunday night work with the agent was established. The superintendent directed it to be done. Plaintiff always claimed pay for it, and was never paid anything.

2. The fifth statement of facts found by the referee is not sustained by the evidence. The agent had authority to hire. He exercised it every day, and the hiring was good and binding on defendants until disapproved of, and the man notified or discharged. Can an agent set an employee at work about the business of his principal, and that too by the directions of the principal, and have the principal escape liability upon the ground of want of original authority in the agent to do the act?

3. All the exceptions to said report are well taken, and judgment should be reversed and new trial granted.

J. C. NEWKIRK, *for defendants and respondents.*

I. The plaintiff has been paid in full for the time he worked.

1. He was paid every month in full for the services of each month, and gave receipts to that effect each month.

2. There is no evidence that the plaintiff did not know the nature of the receipts he signed.

3. There is no evidence of mistake or fraud in the giving of the receipts, or that they do not express just what was the understanding of the parties.

4. The plaintiff was hired by the month, and was paid each month for a month's work; he could work no more than a month in each month.

II. The receipts are conclusive between the parties unless there is mistake or fraud shown, of which there is no proof in the case.

III. The agent Lee, had no authority to agree to pay the plaintiff extra for watching Sunday nights, so as to bind the defendants. The plaintiff seeking to recover on the employment of an agent, must show the authority of the agent to bind the principal. The referee has found that the agent did not have such authority in this case, which finding is sustained by the evidence.

IV. The plaintiff receiving his pay for the month of January, 1854, and for each subsequent month, without an increase of pay, and signing receipts in full for services, contradicts the alleged fact of an agreement to pay him more or extra for the Sunday nights. The plaintiff gives no explanation why he signed those receipts.

V. The plaintiff soon after the alleged agreement, was informed that he would not be paid extra for watching Sunday nights; that Mr. Lee had no authority to make such an agreement; that the watching Sunday nights was a duty he was bound to perform as a part of his month's work, and came within his employment for a month's work, and that if he was not satisfied with the pay he was getting he might leave, and he continued to work and receive his pay after this as before.

1. The receiving his pay monthly after that without an increase of pay, and signing receipts in full payment for each month's services, was an abandonment of his alleged claim for extra pay.

2. Having received such pay and given such receipts, he cannot now recover on an alleged agreement for increased pay.

3. For such payments were made by the defendants, receipts taken, and the employment of plaintiff continued, with notice to plaintiff that the defendants repudiated the alleged agreement for extra pay, and that the payments

made from month to month were in full for all claims. This was continued for the period of over four years. The defendants had a right to infer that the claim for extra pay had been abandoned.

4. After all this, and after the lapse of such a length of time, to permit the plaintiff to recover would be a fraud upon the defendants, and the plaintiff is now estopped from alleging such claim.

VI. The evidence of the declarations and admissions of S. P. Lee, were properly stricken out and rejected.

1. They were not made at the time of the making the agreement as a part of the transaction.

2. The defendants were not bound by any admissions made afterwards by their agent. (*Thallimer* agt. *Brinckerhoff*, 4 *Wend.* 394; *Fogg* agt. *Child*, 13 *Barb.* 246; *Budlong* agt. *Nostrand*, 24 *Barb.* 25.) The judgment should be affirmed with costs.

By the court, INGALLS, J. The referee has found among other facts, in substance, that the plaintiff during all the time he worked for the defendants was hired by the month, at from $20 to $24 per month, and received the pay and signed the pay rolls; that Gray was the general superintendent during all the time the plaintiff was in the defendants' employment; that the authority of Day, Lee, and Knight to employ workmen was subject to Gray's approval, and that Gray never authorized them to pay the plaintiff any greater sum than he was receiving as his month's wages; that the plaintiff was informed soon after he commenced watching Sunday nights that his compensation would not be increased, and that he might leave the defendants' employment if dissatisfied, and that he continued watching Sunday nights after he was so informed; that the employment of the plaintiff to watch Sunday nights, and to pay him an extra compensation therefor, was without the consent or approbation of the general superintendent

of the defendants, and not binding upon them, and that the plaintiff was not entitled to recover for such extra work; that the plaintiff continuing to work after he was informed that his pay or wages would not be increased by reason of such extra work, and receiving his pay every month to the time he left the employment of the defendants, *is evidence that he did not expect* any more or greater pay than he was receiving.

If the referee has found the facts correctly, and where there is a conflict in the evidence this court must assume that he has, I think this cause was properly decided. If Lee was not authorized to employ the plaintiff to render the extra service, and bind the defendants to pay therefor, the plaintiff could have no legal claim against the defendants unless they adopted and ratified the act of Lee, thereby creating a liability. Whether Lee possessed that authority, or whether the defendants ratified such employment, were questions of fact, upon which the referee has found adversely to the plaintiff, and the evidence is not such as to justify this court in interfering with the determination of the referee upon those questions. The evidence shows that soon after the plaintiff's employment commenced he applied for pay for such extra service, and was informed that it was unauthorized, and would not be acceded to by the defendants, and if persisted in by the plaintiff, he was at liberty to leave the defendants' employment, after which the plaintiff continued rendering the same service, and receiving and receipting his monthly wages, without any recognition by defendants of this claim for extra compensation. Under such circumstances, I think the plaintiff must be held to have waived such claim, and is thereby concluded by such waiver. When he was informed by the superintendent that if the claim for extra pay was insisted upon by the plaintiff, he would not be continued in the defendants' service, the plaintiff was put to an election, either to abandon the employment or continue upon the

terms proposed by defendants, and having continued, and accepting the monthly wages and receipting the same, the referee was justified in holding him concluded by his own conduct in regard to such extra compensation.

While an ordinary receipt for money is the subject of explanation, and may not conclude a party, yet the explanation should be such as to leave no reasonable doubt that it was not intended to embrace the claim sought to be recovered. In this case the evidence is far from producing that effect—goes far to support the receipt, and renders it conclusive. The referee committed no error in striking out the evidence of Hurlburt in reference to Lee's hiring the plaintiff, as it was a declaration to a third party, not made to or in the presence of the plaintiff, nor was his name mentioned, nor did the declaration accompany any *authorized act*, to explain or characterise which such declaration was necessary.

The referee properly excluded the evidence of Clarke that he took the place of the plaintiff at the compensation of $30 per month, and that there was no increase in the wages of other laborers. This evidence was wholly immaterial so far as the plaintiff was concerned, as the company were at liberty to employ whoever they chose, and to pay whatever sum they were disposed to, and the evidence if admitted, could not have properly affected the liability of the defendants to the plaintiff. The objection was not well taken to the question put to the witness Gray, as to Lee's authority to employ plaintiff. The objection was too general—being aimed at form and not substance—the plaintiff should have specified the defect, so that the defendants could have changed the form of the question. (12 *N. Y.* 451 ; 5 *Barb.* 406 ; 17 *Wend.* 143.) If the plaintiff intended by the objection that the question was leading, that was matter of discretion with the referee.

The referee properly overruled the offer of the plaintiff to prove that he was not paid the usual wages of men who

watched every night in the week. The same reasons may be assigned in support of this decision of the referee as that in excluding the evidence of Clarke. It is quite possible that the plaintiff has not received an adequate compensation for his services; however that may be, this court cannot re-try the cause, its province being merely to review the proceedings of the referee, to ascertain whether any error has been committed by him upon the trial; if none are discovered the judgment must be affirmed.

Having arrived at the conclusion that no error was committed by the referee, the judgment must be affirmed with costs.