ABELARD GUTHRIE *v.* AARON W. MERRILL.

*Error from Wyandotte County.*

Where no showing is made of efforts to produce original papers, their absence will be attributed to the *laches* of the party offering secondary evidence of their contents. Such secondary evidence would be inadmissible while the originals are within the possible reach of the party offering the secondary evidence. 1 *Greenleaf's Ev.*, ¿ 84; 9 *Wheat.*, 558; 2 *Phil. Ev.*, 215.

Where secondary evidence of the contents of a written instrument is allowed

to go to the jury without a proper foundation having been laid therefor, it is error in the court to refuse to rule it out and to instruct the jury to disregard it.

In October, 1865, it was error to compute interest on money due on contract expressing no rate, at ten per cent. per annum.

Where plaintiff agreed to work for a stipulated price per month, the contract being silent as to extra services, *held*, that in absence of other proof, all extra work done on Sundays will be deemed to have been performed under the contract.

It is the duty of courts to charge juries upon all the issues involved, but where substantial justice has been done, a judgment will not be reversed on account of failure to charge alone, especially where the record fails to show that the charges asked were reduced to writing.

The facts of the case appear in the opinion of the court.

*Jesse Cooper*, for plaintiff in error.

*Glick & Cook*, for defendant in error.

*Cooper*, for plaintiff, submitted:

1. The petition sets out the contract. The answer nowhere denies the execution of the contract, or liability on it, but avers performance. With this state of pleading, judgment must be for or against all defendants. There is no issue as to the liability of other members of the firm, but whether the services were performed under the contract.

2. Secondary evidence of the contents of the written contract upon which this action is founded, was not admissible. The evidence did not show the original instrument ·beyond the reach of the party. When it fully appeared that the written instrument was placed in the hands of a depositary, and that no inquiry had

ever been made for it, secondary evidence should be excluded. (1 *Greenleaf's Ev.*, § 84, *p.* 99, § 509, *p.* 581, § 560; *Sebee* v. *Dow*, 9 *Wheat.*, 558, 563; 2 *Cowen & Hill's notes to Phil. Ev.*, *p.* 1214, *note* 861.) The motion to strike the secondary evidence out, or rule it from the jury, should have been sustained.

3. The copy of the contract was inadmissible, because, 1. It was the contract of the Quindaro Co., and had been ratified and executed, as far as it had gone, by them and for them. (2 *Starkie's Ev.*, 58, 59.) 2. Evidence of the loss or destruction of the original document had not been given, nor had there been any effort to produce the original.

4. Evidence to prove that the contract was executed by defendants in the suit, and its stipulations performed by them, was competent as showing whose contract it was. 2 *Starkie's Ev.*, *p.* 58, 59, *and authorities cited.*

5. The charge, as asked by the plaintiff, should have been given. 1. No person can claim or recover pay for services on the Sabbath, because the act of labor is prohibited by law. (*Comp. L.*, 335, § 245.) 2. The case shows fully that the parties came together to settle, and did settle, and that the plaintiff offered the defendant all that was his due, and that he refused it.

6. It is made the duty of the court to charge the jury what the law is, as applicable to the facts. The court must charge or refuse to charge as requested, but must charge the jury.

7. The court should have charged the jury upon the subject of the statute of limitations. The petition was filed in May, 1862, and plaintiff claimed that inasmuch as this claim was due in 1857, the demand was barred. The statute has reference to the commencement of the

action, and it cannot be said that an action is commenced before a petition is filed.

8. The instruction to the jury to count the interest at ten per cent. on the defendant's claim, was erroneous. Six per cent. was the legal rate allowed when the contract was made. Beside, the jury must have cast interest for six or seven months more than the time actually named, to have allowed so large a sum. *Stat.* 1855, *p.* 433, § 1.

*By the Court,* Safford, J.

There are several assignments of error in this case, which have been presented and insisted upon by counsel with much earnestness, as furnishing, and each in itself, ample grounds for the reversal of the judgment herein, as entered by the district court. But it will not be necessary to consider all of the errors complained of, inasmuch as the views we entertain, respecting a small portion of them, practically determine the disposition of the case, as far as we are concerned. But even if we were disposed to discuss all the points which have been raised by the argument, we should, perhaps, be unable to do so with satisfaction to ourselves, owing to the condition of that part of the record—confused and meager—in which those portions of the proceedings below upon which some of such points rest, are stated in the exceptions, or rather in the "case made."

The first alleged ground of error, which we propose to examine, is that in relation to the admission of secondary evidence to the jury for the purpose of showing the contents of the written contract or instrument, upon which the action was founded. The record shows

that the plaintiff was a witness in his own behalf, and that in regard to the written contract he testified as follows : That such written contract was executed by himself and the defendant, on behalf of the Quindaro company ; that at the time this suit was commenced, he went to the office of Mr. Chadwick, who had the custody of the contract, and took a copy of the same ; that he left the contract with Mr. Chadwick, in Quindaro, where he then resided ; that at some time during the progress of the suit, he delivered the original contract to his attorney. And on cross-examination the plaintiff further stated that he would not be positive whether the paper he gave his attorney was a copy of the contract, or the original. Stockton, who was the attorney referred to in the plaintiff's testimony, was then called, and testified that he received from plaintiff what purported to be a contract like the one described in the petition, and which he filed in the action ; but whether it was the original or not, he was unable to state. C. S. Glick then testified that when he filed the reply to defendant's answer, he saw a paper in the files that purported to be the contract, but whether it was the original or not, he could not state. The above seems to comprise all the evidence which was submitted as preliminary to the introduction of secondary evidence of the contents of the contract.

The defendant below insisted that a sufficient foundation had not been laid to authorize such secondary evidence to go to the jury. But the court overruled his objection, and allowed the evidence. We think that this ruling of the court was clearly erroneous. In our view, there was nothing in the evidence even tending to show that the original contract was lost, or that it was beyond the reach of the plaintiff. And, indeed,

from all that appears to the contrary on his part, it might have been, at the very time of the trial, in his own possession, or in that of some of his friends. The plaintiff's own testimony shows that a third party had been made the custodian of the contract, thus rendering it certain that he knew where to look for it, and especially so, when we consider the fact that he declares that he took a copy thereof at the time of the commencement of the suit, and that he left the original with the party having the custody of it. Besides this, he does not show, or attempt to, that it had, in any manner, been removed from the care of the depositary (who had been mutually agreed upon between the parties), unless his own statement, to the effect that sometime during the progress of the trial he delivered to his attorney the original contract, would tend to such result. But even this statement is rendered of but little value by his after-assertion that he was not sure that the paper delivered to his attorney was the original. Taking all of the statements of the plaintiff and his attorney together, which bear upon this point, it would seem to be quite certain that the paper which he delivered to his attorney as the contract, was really and in fact not so, but the very copy of the contract which he himself had made. And this conviction is rendered irresistible when we consider the testimony of the depositary, Mr. Chadwick, to the effect that he had no knowledge or recollection of having been called upon by either party for the contract.

It is a well settled principle of law, governing the introduction of testimony, that secondary evidence of the contents of written instruments, is not admissible when the originals are within the control or custody of the party, or when they are within his reach, and may

be obtained with reasonable effort on his part. If under such circumstances he does not produce them, or cause them to be produced, or at least make some reasonable effort to secure such production, their absence is the result of his own laches, and he will not be permitted to substitute secondary evidence. 1 *Greenleaf*, § 84, *p.* 99 ; 9 *Wheaton*, 558 ; 2 *Phillips Ev.*, 215 *to* 217, *and notes to text.*

In this case we think it is clear that the plaintiff did not make such effort as he ought to have made to procure the original contract, to entitle him to offer secondary evidence of its contents to the jury.

But while we think that secondary evidence of the contents of the written contract should not have been allowed to go to the jury at all, under the testimony of the plaintiff and his attorneys, our conviction is doubly strong that after the evidence of Mr. Chadwick had been introduced, all such secondary evidence should have been ruled out, and the jury instructed not to take it into account in making up their verdict. The court refused so to do, and thereby committed another error, calculated to prejudice the rights of the defendant.

As a further ground of error, it is alleged that the court erred in instructing the jury that they must allow and compute the interest on the plaintiff's claim, at the rate of ten per cent. per annum, from the 2d day of October, 1857. This was clearly wrong, inasmuch as the laws regulating interest, in force at the time, when it is alleged the money became due to the plaintiff, to wit, on the 2d day of October, 1857, and at the time when the judgment was rendered, to wit, on the 6th day of October, 1865, did not permit of such a rate of interest upon such claims.

13

It is claimed that the court erred in failing to charge the jury in relation to the subject of the plaintiff's claim for pay for extra services on the Sabbath. This question is not very clearly presented in the record, and we are unable to discover just the position it assumed before the court and jury, by reason of the failure of the parties to set out all of the evidence.

But we really cannot see how such a claim could be brought in under the contract. The plaintiff agreed to work on the ferry for the sum of one hundred dollars per month, and the whole record, taken together, shows that he did so work for the term of six months, and perhaps two or three days.

The contract is silent as to any extra pay for services on the Sabbath, or otherwise; and if he chose to perform such service, he will be held to have performed it under the contract. We think, from all the circumstances developed in the record, that any claim for extra service was simply without foundation.

It is further claimed that the court erred in failing to charge the jury in regard to the question of settlement between the parties, as to which there was testimony introduced by both plaintiff and defendant. It is no doubt the duty of courts to charge juries upon all the issues of law involved in cases which may be submitted to them, but it frequently happens that a failure so to do does not work any serious injury to either party, and if substantial justice has been done, a revising court will not reverse a judgment for such failure alone. In this case it no doubt would have been proper for the court to have charged the jury further than it did, and upon some points which he did not touch upon, as it appears by the record. But inasmuch as such instructions as were asked do not seem to have been put

in writing and presented to the court for allowance or refusal, and as the same state of facts may not arise on a new trial, we do not feel called upon to pursue this part of the case further.  As to the instructions which were given by the court, so far as they went, we see no objection to them.  As to the question of the statute of limitations, attempted to be raised, we are frank to say that we do not consider that it is in the case at all.

The judgment of the district court is reversed, and cause remanded, with instructions to sustain the motion for a new trial.

All the justices concurring.