(14 Misc. Rep. 272.)

## McCORMACK v. MAYOR, ETC., OF CITY OF NEW YORK.

(Superior Court of New York City, Trial Term.  October, 1895.)

STREET-CLEANING DEPARTMENT—UNIFORMED FORCE—EXTRA COMPENSATION.
  Laws 1892, c. 269, as amended by Laws 1894, c. 368, adding section 704a to the consolidation act, declares that the salaries and compensation of members of the uniformed force of the department of street cleaning shall be fixed by the board of estimates and apportionment, and shall not exceed the following: "Of the general superintendent, $3,000; * * * of the district superintendents, $1,800 each; * * * of the hostlers, $720 each, and extra pay for work on Sundays." *Held* that, even if extra pay for Sunday work is authorized except in the case of hostlers, it must be fixed by the board of estimates; and it having fixed the salary of district superintendents at $1,800, without any provision for extra pay for Sunday work, but merely recited, in its estimate for the department of street cleaning, that the amount included all necessary expenses for Sunday work, they could not recover extra pay for such work.

Action by John McCormack against the mayor, aldermen, and commonalty of the city of New York.  Judgment for defendant.

The action is to recover $246.86 for services alleged to have been rendered by plaintiff, as district superintendent in the department of street cleaning, between April 26, 1894, and March 5, 1895, both dates inclusive.  The plaintiff was appointed under chapter 368 of the Laws of 1894, which amends section 704a, which was added to the consolidation act (section 704) by chapter 269 of the Laws of 1892.  The section which relates to this dispute is as follows: "* * * The annual salaries and compensations of the members of the uniformed force of the department of street cleaning shall be fixed by the board of estimate and apportionment, and shall not exceed the following: Of the general superintendent, three thousand dollars;  of the assistant superintendent, two thousand five hundred dollars;  of the superintendent of stables, two thousand dollars;  of the master mechanic, one thousand eight hundred dollars;  of the superintendent of final disposition, two thousand dollars;  of the assistant superintendent of final disposition, one thousand five hundred dollars;  of the district superintendents, one thousand eight hundred dollars each;  of the time collectors, one thousand two hundred dollars each;  of the section foremen, one thousand dollars each;  of the dump inspectors, one thousand dollars each;  of the assistant dump inspectors, nine hundred dollars each;  of the tug and scow inspectors, one thousand dollars each;  of the dump boardmen, seven hundred and twenty dollars each;  of the sweepers, seven hundred and twenty dollars each;  of the drivers, seven hundred and twenty dollars each;  of the stable foremen, one thousand two hundred dollars each;  of the assistant stable foremen, nine hundred dollars each;  of the hostlers, seven hundred and twenty dollars each, and extra pay for work on Sundays. * * *"  The claim for extra pay rests upon the use of the words "extra pay for work on Sundays" in connection with the compensation of hostlers; the plaintiff's contention being that these words apply to each of the officials of the uniformed force whose offices are created and compensation defined by the section quoted.  In fixing the amount of his claim, the plaintiff allows 313 working days to the year, which at $1,800 per annum, makes $5.75 per day, or $246.86 for the 46 days' work in question.  There is no proof that the defendants in any official form fixed any specific compensation for extra work, such as the plaintiff claims to have rendered; and simply because he did 46 days' work upon Sundays, which he maintains was not included in his working time, he arbitrarily fixes his compensation therefor in the manner stated.

The board of estimate and apportionment on July 31, 1894, passed the following resolution: "Resolved, that the annual salaries and compensation of the members of the uniformed force of the department of street

cleaning shall be and are hereby fixed at the amount stated in the statute as quoted in the foregoing preamble, to take effect from and after April 26, 1894, the day of the passage of chapter 368, Laws 1894." On December 29, 1894, the then commissioner of the department wrote to the board, calling attention to the fact that it had required him to submit a statement showing the amount necessary to be appropriated to pay members of the uniformed force of his department for Sunday work. In the letter he refers to an opinion said to have been delivered by the corporation counsel, in which the latter is reported as saying: "The statute therefore contemplates that the annual salary shall be a fixed sum, covering all services rendered upon ordinary working days of the year, and that, in addition thereto, extra pay shall be given to the members of the uniformed force for Sunday work, and that the board shall fix the annual salary, and also the extra pay for Sunday." After receiving this letter, the board, in making its final estimate for the different departments, allowed to the department of street cleaning the sum of $2,396,000, stating that the appropriation includes all necessary expenses required for Sunday work; but the particulars thereof are not given, so that the action of the board must be read in the light of the directions of the statute. Plaintiff's yearly salary was regularly paid in monthly installments of $150 each, and receipted for. He evidently founds his claim upon the act of 1894, supra, the alleged construction imputed to that act by the corporation counsel, and the action of the board of estimate and apportionment thereon.

The defendants deny all liability.

Thomas O'Callaghan, for plaintiff.

Francis M. Scott and William L. Turner, for defendants.

McADAM, J. The plaintiff's case certainly cannot be upheld if reliance is to be placed on the punctuation of the statute. Different punctuation would be needed to indicate that the legislature intended that "extra pay for work on Sundays" should apply to all officials enumerated in the act. Instead of a comma, which is actually used after the word immediately preceding "and extra," etc., a semicolon would have been the proper mark. The legislature probably had in view the fact that hostlers are the only ones of whom it can be said that in season and out of season the nature of their employment necessitates Sunday work, and intended that they, and not the other employés enumerated, should be compensated for the extra labor which their duties imposed. And while it has been held that punctuation does not control the interpretation of a statute, and that it may be disregarded when a result will be reached that would lead to an absurdity, yet the punctuation may be some indication of the meaning, and the legislative intent may often be determined from it. End. Interp. St. § 61.

Since the statute requires the intervention of the board of estimate and apportionment, whose duty it is to provide, not only for the annual salaries of members of the uniformed force of the department, but pay for extra work as well, a recovery for extra pay for work on Sundays can only be had upon an allegation of proof that the board has by legal sanction acted, and fixed the amount of such extra compensation. This element is lacking in the plaintiff's case. Indeed, the plaintiff's salary cannot, under the statute, exceed $1,800, and that is the sum at which it was fixed by the board. The provision in the act as to extra pay on Sundays having no relation to the position he occupied, the board could not allow any compensation .

in addition to that specially prescribed by the statute itself.   The board did not assume to make a per diem, monthly, or yearly allowance to members of the uniformed force who worked on Sunday; nor can it be inferred that there is included, in the final estimate of $2,396,000, extra pay to be given for Sunday work, at the same rate provided by the annual salary for weekday work.   This is especially so in regard to members of the uniformed force not hostlers, for as to such persons there was no authority in the act to make extra compensation, and it cannot be said that the board assumed to do that which it had no authority to do.

"It is a well-settled rule that a person accepting a public office, with a fixed salary, is bound to perform the duties of the office for the salary. He cannot legally claim additional compensation for the discharge of these duties, even though the salary may be a very inadequate remuneration for the services. Nor does it alter the case that by subsequent statutes or ordinances his duties within the scope of the charter powers pertaining to the office are increased, and not his salary. Whenever he considers the compensation inadequate, he is at liberty to resign. The rule is of importance to the public. To allow changes and additions in the duties properly belonging, or which may properly be attached, to an office, to lay the foundation for extra compensation, would introduce intolerable mischief. The rule, too, should be rigidly enforced. The statutes of the legislature and the ordinances of our municipal corporations seldom prescribe with much detail and particularity the duties annexed to public offices, and it requires but little ingenuity to run nice distinctions between what duties may, and what may not, be considered strictly official, and, if these distinctions are much favored by courts of justice, it may lead to great abuse. Not only has an officer, under such circumstances, no claim for extra compensation, but a promise to pay him an extra fee or sum beyond that fixed by law is not binding, though he renders services and exercises a degree of diligence greater than could legally have been required of him." Dill. Mun. Corp. (4th Ed.) §§ 233, 234.

These principles have been repeatedly sustained.   Haswell v. Mayor, etc., 81 N. Y., at page 259; Palmer v. Mayor, etc., 2 Sandf. 318; People v. Supervisors of City and County of New York, 1 Hill, 362; Hatch v. Mann, 15 Wend. 44; Waterman v. Mayor, etc., 7 Daly, 489; Wendell v. City of Brooklyn, 29 Barb. 204; People v. Supervisors of Albany, 12 Wend. 257; Bright v. Supervisors, 18 Johns. 242; Mallory v. Same, 2 Cow. 531, 533.   It is not less difficult to recover for extra compensation against a public, than a private, employer, and the evidence here would not establish a valid claim against either.   It is clear that, where a stipulated remuneration has been agreed upon, the servant has no claim to additional remuneration on the mere ground of his performance of additional services.   Unless he can prove some contract, either express or implied, on the part of his master, to pay him an increased salary for his additional services, he can recover no remuneration for them.   Smith, Mast. & Serv. (3d Ed.) p. 160.   Thus, where a clerk to the commissioners of land tax employed the plaintiff as his deputy, at a salary of £100 a year, and on new duties being imposed, which gave the clerk additional work, the plaintiff also performed that, it was held that he was not legally entitled to any additional salary on that account; Lord Kenyon observing that, if he was, every porter in a shop, or clerk in an office, would, upon an increase of his master's business, be equally

entitled to demand an increase of wages. Id., and cases cited. Moreover, a party claiming extra pay must show a contract for extra work. Moffatt v. City of Brooklyn, 1 N. Y. Supp. 781. See, also, McGovern v. Railroad Co., 28 How. Prac. 493. All services rendered under a contract are deemed to have been included in it (Guthrie v. Merrill, 4 Kan. 187); and where the statute regulates the matter, while the servant may insist upon his rights, and a refusal to labor longer will not be regarded as such insubordination as will justify his discharge, yet, if he voluntarily labors more hours each day than is reasonable, or than the statute fixes as the limit of a day's work, he can make no claim for extra compensation on that account (Luske v. Hotchkiss, 37 Conn. 219). A servant is not bound to labor on the Sabbath, and if the master compels him to do so, it furnishes a good cause for leaving his service. Com. v. St. German, 1 Browne (Pa.) 24; Warner v. Smith, 8 Conn. 14; Berry v. Wallace, Wright, 657. But if he does perform services for him upon the Sabbath, without any special request or promise to pay for the same, no extra charge can be made therefor, even though the work was of that class regarded as necessary; the law regarding all the service performed by the laborer during the term, in the absence of special request or promise, as being included in the contract, and compensated for by the compensation therein provided. Guthrie v. Merrill, supra; Bennett v. Robinson, 18 La. Ann. 204. Under the "eight hour law" (chapter 385, Laws 1870) an employer is not liable to an employé hired by the day for labor beyond the statutory time, unless it was provided for in the contract of employment. The intent of the act was to place the control of the hours of labor within the discretion of the employé, giving him the privilege, at his option, to refuse to work beyond the eight hours, or to secure extra compensation for extra work by stipulation in the contract of employment. In the absence of any such stipulation, the language of the act repels any inference of an intent to confer a right upon an employé to charge for more than one day's labor for services rendered in any calendar day, and for such services he may not demand any extra compensation. McCarthy v. Mayor, etc., 96 N. Y. 1.

It is clear that no liability attached to the defendants to make any special compensation for the alleged extra work, and they are entitled to judgment.