McAdam, J.
The plaintiff’s case certainly cannot be upheld if reliance is to be placed on the punctuation of statute. Different punctuation would be needed to indicate that the legislature intended that “extra pay forwork on Sundays” should apply to all officials enumerated in the act. Instead of a comma, which is actually used after the word immediately preceding “ and extra,” etc., a semicolon would have been the proper mark The legislature probably had in view the fact that hostlers are the only ones of whom it can be said that in season and out of season the nature of their employment necessitates Sunday work, and intended that they, and not the other employes enumerated, should be compensated for the extra labor which their duties imposed. And while it has been held that punctuation does not control the interpretation of a statute, and that it may be disregarded when a result will be reached that would lead to an absurdity, yet the punctuation may be some indication of the meaning, and the legislative intent may often be determined from it. End. Interp. St. § 81.
Since the statute requires the intervention of the board of estimate and apportionment, whose duty it is to provide, not only for the annual salaries of members of the uniformed force of the department, but pay for extra work as well, a recovery for extra pay for work on Sundays can only be had upon an allegation of proof that the board has by legal sanction acted, and fixed the amount of such extra compensation. This element is lacking in the plaintiff’s case.
Indeed, the plaintiff’s salary cannot under statute exceed $1,800-, and that is the sum at which it was fixed by the board. The provision in the act as to extra pay on Sundays having no relation to the position he occupied, the board could not allow any compensation in addition to that specially prescribed by the statute itself. The board did not assume to make a per diem, monthly, or yearly allowance to members of the ununiformed force who worked on Sunday ; nor can it be inferred that there is includéd, in the final estimate of $2,396,000, extra pay to be given for Sunday work, at the same rate provided by the annual salary for weekday work. This is especially so in regard to members of the ununiformed force not hostlers, for as to such persons there was no authority in the act to make extra compensation, and it cannot be said that the board assumed to do that which it had no authority to do.
“It is a well-settled rule that a person accepting a public office, with a fixed salary, is bound to perform the duties of the office for *426 the salary. He cannot legally claim additional compensation for the discharge of these duties, even though the salary may be a very inadequate remuneration for the services. Nor does it alter the case that by subsequent statutes or ordinances his duties within the scope of the charter powers pertaining to the office are increased, and not his salary. Whenever he considers the compensation inadequate he is at liberty to resign. The rule is of importance to the public. To allow changes and additions in the duties properly belonging, or which may properly be attached, to an office, to lay the foundation for extra compensation, would introduce intolerable mischief. The rule, too, should be rigidly enforced. The statutes of the legislature and the ordinances of our municipal corporations seldom prescribe with much detail and particularity the duties annexed to public offices, and it requires but little ingenuity to run nice distinctions between what duties may, and what may not, be considered strictly official, and, if these distinctions are much favored by courts of justice, it may lead to great abuse. Not only has an officer, under such circumstances, no claim for extra compensation, but a promise to pay him an extra fee or sum beyond that fixed by law is not binding, though he renders services and exercises a degree of diligence greater than could legally have been requiaed of him.” Dill. Mun. Corp. (fourth ed.) sections 233, 234.
These principles have been repeatedly sustained. Haswell v. Mayor, etc., 81 N. Y., at page 259; Palmer v. Mayor, etc., 2 Sandf. 318; People v. Supervisors of City and County of New York, 1 Hill, 362; Hatch v. Mann, 15 Wend. 44; Waterman v. Mayor, etc., 7 Daly, 489; Wendell v. City of Brooklyn, 29 Barb. 204; People v. Supervisors of Albany, 12 Wend. 257; Bright v. Supervisors, 18 Johns. 242; Mallory v. Same, 2 Cow. 531, 533. It is not less difficult to recover for extra compensation against a public, than a private employer, and the evidence here would not establish a valid claim against either. It is clear that,.where a stipulated remuneration has been agreed upon, the servant has no claim to additional remuneration on the mere ground of his performance of additional services. Unless he can prove some contract, either express or implied, on the part of his master, to pay him an increased salary for bis additional services, he can recover no remuneration for them. Smith, Mast. & Serv. (3d ed.) p. 160. Thus, where a clerk to the commissioners of land tax employed the plaintiff as his deputy, at a salary of £100 a year, and on new duties being imposed, which gave the clerk additional work, the plaintiff also performed that, it was held that he was not legally entitled to any additional salary on that account; Lord Kenyon observing th'at, if he was, every porter in a shop, or clerk in an office, would, upon an increase of his master’s business, be equally entitled to demand an increase of wages. Id., and cases cited. Moreover, a party claiming extra pay must show a contract for extra work. Moffatt v. City of Brooklyn, 1 N. Y. Supp. 781. See, also, McGovern v. Railroad Co., 28 How. Prac. 499. All services rendered under a contract are deemed to have been included in it (Guthrie v. Merrill, 4 Kan. 187); and where the statute regulates *427 the matter, while the servant may insist upon his" rights, and a refusal to labor longer will not be regarded as such insubordination as will justify his discharge, yet, if he voluntarily labors more hours each day than is reasonable, or than the statute fixes as the limit of a day's work, he can make no claim for extra compensation on that account. Luske v. Hotchkiss, 37 Conn. 219. A servant is not bound to labor on the Sabbath, and if the master compels him to do so, it furnishes a good cause for leaving his service. Com v. St. German, 1 Browne (Pa.) 24; Warner v. Smith, 8 Conn. 14; Berry v. Wallace, Wright, 657. But if he does perform services for him upon the Sabbath, without any special request or promise to pay for the same, no extra charge can be made therefore, even though the work was of that class regarded as necessary; the law regarding all the service performed by the laborer during the term, in the absence of special request or promise, as being included in the contract, and compensated for by the compensation therein provided. Guthrie v. Merrill, supra; Bennett v. Robinson, 18 La. Ann. 204. Under the “eight hour law’’ (chapter 385, Laws 1870) an employer is not liable to an employe hired by the day for labor beyond the statutory time, unless it was provided for in the contract of employment. The intent of the act was to place the control of the hours of labor within the discretion of the employe, giving him the privilege, at his option, to refuse to work beyond the eight hours, or to secure extra compensation for extra work by stipulation in the contract of employment. In the absence of any such stipulation, the language of the act repels any inference of an intent to confer a right upon an employe to charge for more than one day’s labor for services rendered in any calendar day, and for such services he may not demand any extra compensation. McCarthy v. Mayor, etc., 96 N. Y. 1.
It is clear that no liability attached to the defendants to make any special compensation for the alleged extra work, and they are entitled to judgment.